1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  JOAN KILLEEN
   Deputy Attorney General
6  State Bar No. 111679
    455 Golden Gate Avenue, Suite 11000
7   San Francisco, CA 94102-7004
    Telephone: (415) 703-5968
8   Fax: (415) 703-1234
    Email: Joan.Killeen@doj.ca.gov
9  Attorneys for Respondent

10              IN THE UNITED STATES DISTRICT COURT

11           FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                   SAN FRANCISCO DIVISION

13

14  **EDWIN BELONEY,**                        C 07-4649 WHA (PR)

                                  Petitioner,
15

16              v.

    **M. S. EVANS, Warden,**
17

                                  Respondent.
18

19  **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER TO**
20  **PETITION FOR WRIT OF HABEAS CORPUS**

21

22

23

24

25

26

27

28

1   EDMUND G. BROWN JR.
    Attorney General of the State of California
2   DANE R. GILLETTE
    Chief Assistant Attorney General
3   GERALD A. ENGLER
    Senior Assistant Attorney General
4   PEGGY S. RUFFRA
    Supervising Deputy Attorney General
5   JOAN KILLEEN
    Deputy Attorney General
6   State Bar No. 111679
     455 Golden Gate Avenue, Suite 11000
7    San Francisco, CA 94102-7004
     Telephone: (415) 703-5968
8    Fax: (415) 703-1234
     Email: Joan.Killeen@doj.ca.gov
9   Attorneys for Respondent

10              IN THE UNITED STATES DISTRICT COURT

11           FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                   SAN FRANCISCO DIVISION

|  |  |
|---|---|
| **EDWIN BELONEY,** | C 07-4649 WHA (PR) |
| Petitioner, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS** |
| **v.** | |
| **M. S. EVANS, Warden,** | |
| Respondent. | |

19          In its Order to Show Cause, this Court identified petitioner's claims for federal habeas

20   relief as follows:  "(1) the trial court's admission of evidence that petitioner committed a home

21   invasion robbery near the time of the carjacking charged here violated his due process rights; and

22   (2) there was insufficient evidence to support the gang enhancements."  9/12/07 Order to Show

23   Cause at 2.  Because the state court reasonably rejected petitioner's claims, he is not entitled to

24   relief.

                           **STATEMENT OF THE CASE**

26          On January 13, 2005, the Santa Clara County District Attorney filed an information

27   charging Avery Michael Darbey and Edwin Beloney with carjacking, Cal. Penal Code § 215, second

1  degree robbery, Cal. Penal Code §§ 211-212.5(c), and receiving stolen property, Cal. Penal Code

2  § 496(a).  As to counts one and two, the information alleged that the crimes were committed for the

3  benefit of, at the direction of, or in association with a criminal street gang, with the specific intent

4  to promote, further, or assist in any criminal conduct by gang members, Cal. Penal Code

5  § 186.22(b)(1)(A), (b)(4).  Exh. A [hereafter "CT"] 181-185.[1/]

6        On August 4, 2005, the trial court dismissed count three on the prosecutor's motion.  CT

7  379, 381; Exh. B [hereafter "RT"] 600-601, 760-761.  On August 5, 2005, the jury found Darbey

8  and Beloney guilty of counts one and two and found true the gang enhancement allegations.  CT

9  380; RT 763-769.  On September 9, 2005, the court sentenced both defendants to a 15-year-to-life

10  sentence on count one, to run consecutively to a 13-year determinate sentence on count two.  CT

11  558-563; RT 780-790.

12        On December 28, 2006, the Court of Appeal affirmed petitioner Beloney's judgment on

13  appeal.  Exh. H.  On April 12, 2007, the California Supreme Court denied review.  Exh. J.

14        Petitioner filed his federal habeas corpus petition on September 10, 2007.  His petition is

15  timely.  28 U.S.C. § 2244(d)(1); *Bowen v. Roe*, 188 F.3d 1157 (9th Cir. 1999).

16  <center>**STATEMENT OF FACTS**</center>

17        About 10:50 p.m. on March 21, 2004, Kiflom Hailu, a native of Kenya, was in a parking

18  lot near Loma Verde Way in San Jose with his friend, Fadel Seck, from Senegal.  They were about

19  to get into Hailu's car, a silver Subaru, to go to a party.  RT 113-115.  As they stood by the car, two

20  young Black men approached them, one of whom asked for a cigarette.  RT 115-119.  Both of the

21  men walked toward Hailu's car.  One of them was talking on his phone and saying something like,

22  "Does this look like the car?"  He then came back to Hailu and Seck and asked the person on the

23  phone, "Does this look like the niggers that did this?"  RT 119.  He also said something like, "If

24  these are the niggers, then we are going to blow them."  RT 120.  Hailu thought the men were going

25

26  _____

27      1.  In a plea agreement filed on June 17, 2005, Thomas Hall, who had been charged with the same counts and allegations, pleaded guilty to carjacking, with a maximum sentence of five years, in exchange for his truthful testimony in any future proceeding.  CT 350-351.

28

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - C 07-4649
WHA (PR)

to shoot them.  They went through Hailu's and Seck's pockets, and took Hailu's wallet, cell phone, and keys, and Seck's baseball hat and a copy of his passport.  RT 120-123.  After taking their belongings, the men moved them behind a carport wall and told them to get on their knees.  RT 123-124.  After getting one or two of their friends from another vehicle, the man who had the phone said, "I'm going to take your car and show it to my brother.  If this is the car that he saw, then, you know, you guys are dead.  If it's not, then we are going to leave it there."  RT 124.  Hailu heard one of the men get into his car and drive off.  After waiting two minutes, the other men walked away.  RT 125.

About a month and a half later, Hailu got his car back from the police.  His stereo and speakers were missing, but the car was in good condition.  RT 126, 137.  Hailu did not recognize the robbers in court.  RT 131.  He was not a member of a gang, and did not hear the robbers say anything indicating they were in a gang.  RT 132, 136.

Ryan Goetz knew Darbey as "C" and Beloney as "Fats."  He met them through his friend Thomas Hall, at whose home they visited.  He had heard through others that Darbey and Beloney were members of the Seven Trees gang.  RT 140-142.  Goetz was not a member of any gang.  RT 160.

On the night of March 21, 2004, Goetz went to Hall's apartment, where he saw Darbey and Beloney.  The four of them left in Goetz's car.  They had not been drinking or taking drugs.  RT 142-144, 155-156.  Beloney said they were going to "jack some fools."  Goetz took that to mean they were going to rob someone.  RT 145.  He drove to the corner of Hamilton and Winchester and entered an apartment complex parking lot.  He passed two Black men, who stared in an intimidating manner, and parked the car.  RT 146-148.  The other men in the car said, "What are they doing mugging at us?"  RT 148.  Darbey and Beloney went off together, while Goetz waited with Hall.  Awhile later, Beloney returned and asked Hall if he could drive a stick shift.  Beloney directed Goetz to wait at a nearby gas station, and left with Hall.  RT 148-149.

About a half hour later, Goetz received a call telling him to meet the others at Hall's apartment.  When he arrived, they were discussing what to do with a car and the speakers inside it.  Goetz said they could strip the car in his garage if they gave him the speakers.  Once in Goetz's

Memorandum Of Answer To Petition For Writ Of Habeas Corpus - C 07-4649
WHA (PR)

3

1  garage, all four men participated in dismantling the sound system of a 1999 silver Subaru.  Goetz

2  kept the speakers and car alarm, and the rest of the sound system was put in his car for the other

3  participants to take when they returned to Hall's apartment.  They pushed the Subaru down the street

4  and left it.  RT 150-154.

5  Goetz had not intended that his participation in the crime would benefit a street gang,

6  although he thought two of the participants were gang members.  He had pleaded guilty to

7  possession of stolen property.  RT 161-162, 168-169.

8  Thomas Hall pleaded guilty to carjacking with respect to the incident of March 21, 2004.

9  RT 172.  He knew that Beloney and his brother were members of the Seven Trees Crips based on

10  their tattoos, but he did not know if Darbey was a gang member.  RT 173-175.

11  On the night of March 21, Darbey and Beloney came to Hall's apartment and asked for

12  a ride.  Beloney also asked if he had his B.B. gun.  Hall lied and said he did not have it because he

13  did not want to give it to them.  RT 175-176.  Hall, Goetz, Darbey, and Beloney drove to the

14  apartment complex parking lot, where they passed two Black men who stared at them.  Darbey and

15  Beloney got out of the car.  RT 177-178.  Beloney said, "We are going to handle these fools."  RT

16  180.  Hall and Goetz waited in the car.  Hall thought they were there to pick up drugs.  RT 181.

17  When Beloney returned, he asked Hall if he could drive a stick shift.  Hall said he could,

18  and followed Beloney to the victim's car.  RT 181-182.  Darbey was holding one of the victims by

19  his jacket and saying, "You jacked my brother. . . .  [I]f you guys ain't it, then we will bring the car

20  back."  RT 182.  While Hall was moving the car to the street, Darbey moved the victims into the

21  carport and told them to get on their knees.  Afterward, Darbey and Beloney ran to the car, and the

22  three of them drove back to Hall's apartment. RT 183-185.  Later, they took the stereo and speakers

23  out of the car at Goetz's house.  Darbey and Beloney took a wallet and cell phone, and Hall took a

24  pool stick.  RT 185-186.  Hall participated in the carjacking because he was intimidated by the way

25  Darbey and Beloney were talking to the victims.  RT 186-187.

26  Hall had never been a gang member.  He did not participate in the carjacking to benefit

27  a street gang.  He had been up for a couple of days using methamphetamine and was tired at the

28

1    time.  RT 187-188.  The police later found an empty wallet at his house.  RT 189-190, 195-196.

2        Detective Hamblin interviewed Goetz on March 24, 2004.  Goetz said that before leaving

3    Hall's apartment, Beloney said they were going to "jack some fools," which he took to mean they

4    were going to commit a robbery.  RT 209.[2]  Goetz admitted that he had smoked methamphetamine

5    and marijuana within the previous two or three days.  RT 216.  Hamblin also interviewed Hall, who

6    said that when they were in the parking lot, Beloney said, "We are going to handle these fools."  RT

7    210.  Hamblin recovered a pool cue, wallet, and B.B. gun from Hall's apartment, and "wires, horns,

8    woofers, and a basketball" from Goetz's house.  RT 215.

9        Lieutenant Ryan interviewed Beloney on March 24, 2004.  Beloney admitted he was a

10   member of the Seven Trees street gang.  He also admitted that he went to a parking lot with Hall and

11   Goetz, where he saw some individuals who walked up and startled them.  He had his hands in his

12   jacket pockets, possibly causing someone to think he had a gun.  They got into the victim's vehicle,

13   which Hall drove away.  At Goetz's house, they stripped the vehicle, then pushed it down the hill.

14   RT 219-222.  After his arrest, Beloney called Hall from jail and instructed him to get rid of the

15   property from the robbery.  RT 228-230.

16       Lieutenant Ryan showed Hailu some photographs, one of which depicted Darbey.  RT

17   222-223.  Hailu said Darbey "looks most like the guy, but I'm not a hundred percent sure."  RT 223.

18

19       Detective Sass, who had worked in the gang investigations unit for three years, testified

20   as an expert in the area of African-American street gangs.  RT 232, 250-251.  The Seven Trees Crips

21   gang identified with the color blue and the numbers seven and 408.  RT 261-262.  The primary

22   activities of the gang were "[w]itness intimidation, criminal threats, assault with a deadly weapon,

23   possession of drugs for sales, homicide, carjacking, robbery."  RT 263.  Sass related several

24   incidents involving gang members, RT 263-281, including a 1995 incident in which Beloney

25   participated in the armed robbery of a man whom gang members believed had stolen guns from

26   _____

27       2. Later, Detective Hamblin testified that he was mistaken about the timing of the comment,
     and that the phrase, "jack some fools," was used after the incident.  RT 522-521.

28

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - C 07-4649
WHA (PR)

them. RT 270-271. Detective Sass opined the current case was further evidence of the primary activities of the gang. The robbery and carjacking involved intimidation, simulation of a gun, financial gain, and retaliation for perceived disrespect. RT 281-283.

Incidents that had occurred since the time of the instant case showed Seven Trees Crips was an ongoing criminal street gang. RT 283-296. Detective Sass mentioned a home invasion robbery and assault involving Beloney and Darbey that took place the morning after the robbery and carjacking as an example of ongoing activities. Beloney admitted to police that he was a gang member and that he participated in the home invasion with two other Seven Trees members. RT 283, 296-297. The instant robbery and carjacking also were evidence of ongoing activities. RT 296.

Detective Sass opined that Darbey and Beloney were currently members of Seven Trees Crips. She opined Darbey was a member based on field interview cards, prior police reports, police contacts, documentation, a jail admissions classification, a conversation with an admitted Seven Trees member who said Darbey was a member, and conversations with other gang detectives who had knowledge of Darbey's activities. RT 297-298. Sass opined that Beloney was a member based on conversations with gang detectives who knew of his activities, her review of multiple reports and field interview cards, Beloney's gang tattoos, and his admission to gang membership. RT 311, 314, 339. When Sass interviewed Beloney's brother, Edmond, the day after the carjacking, he said that Darbey and Beloney were Seven Trees members. RT 425, 489. Sass thought Hall and Goetz were gang "affiliates." RT 447.

Before Seven Trees Crips absorbed the Dark Side Mob gang, Darbey was a member of the latter gang. RT 406. Beloney "hung out more with the Family Crip Gangsters." One gang detective documented that Darbey and Beloney "associated with Seven Trees, Dark Side Mob, Family Crip Gangsters, and Cartel Crips." Another gang detective documented that Darbey was a member of Dark Side Mob and Seven Trees, and Beloney was a member of Family Crip Gangsters and Seven Trees. RT 410. In 1996 or 1997, "most of the Crips in San Jose started merging, backing each other." RT 405. Dark Side Mob and Seven Trees became one gang. RT 404. At the time of trial, the Crips gangs were "all under the umbrella" of "408 South Side Crips." RT 410-411; *see* RT

491-492.

Detective Sass listed several gang-related incidents in which Darbey and Beloney had been involved.  In April 1993, Darbey was arrested for attempted auto burglary in gang territory; he was wearing blue clothing at the time.  In December 1994, he had been involved in an assault with a deadly weapon in gang territory with a member of a related gang.  In January 1996, he was involved in a strong-arm robbery and assault and battery in gang territory.  In May 1998, he was contacted for loitering at a bus stop in gang territory.  In June 1998, he was caught selling cocaine in gang territory, associating with an individual with gang tattoos, and carrying a concealed weapon. In December 1998, he was under the influence of a stimulant in gang territory, wearing gang colors, and had a scar of the letters "BK," meaning "blood killer," on his chest.[3/]  In February 1999, he was found in gang territory with a bat concealed under his jacket.  In March 1999, he was caught in possession of marijuana in gang territory.  Also that month he was stopped for frequenting gang territory with Beloney, who gave a false name.  In April 1999, he assaulted an individual who bumped into him in an area near gang territory; he was wearing gang colors at the time.  In November 2001, Darbey admitted in a classification interview with San Bernardino County jail personnel that he was a member of Seven Trees Crips from San Jose and had a nickname of C. Dog. In March 2004, he was involved in a home invasion robbery with Beloney, the victim of which had previously disrespected him on two occasions.  RT 299-309.  In the instant case, Beloney's threat that he might "blow the guy" that "jacked his brother" indicated retaliation for a prior incident.  RT 310.  Also, the crime itself, the simulation of weapons, and the apparent retaliation for a perceived look of disrespect indicated a gang connection.  RT 310-311, 377.

Darbey had met "multiple criteria" for gang membership, "including the admissions,

---

3.  In one report an officer stated that he saw the letters "G.K." on Darbey.  RT 413. Detective Sass thought he was mistaken because she "saw [the letters 'B.K.'] for [herself]."  Darbey had not admitted that the letters stood for "Blood Killer," but Sass had seen them on Crips on other occasions.  She agreed that the letters could be someone's initials.  RT 414.  However, the letters "BK" were "very common to Seven Trees," and were in "their writings, their tagging."  They did not specify membership in Seven Trees, as opposed to Dark Side Mob or Family Crips, but were "Crip specific."  RT 424.

1  frequenting of the gang area, association with known gang members, participation in gang crimes,

2  the scar or mark on him, the clothing," on "multiple" occasions. RT 420. Darbey's admission to

3  Seven Trees membership in the jail classification interview by itself would be sufficient to validate

4  him as a gang member, but in this case there were many additional criteria. RT 421-422.

5      Detective Sass also listed several gang-related incidents in which Beloney had been

6  involved. In March 1994, Beloney purchased marijuana while with Darbey. In February 1995, he

7  was involved in the armed robbery of a man whom gang members believed had stolen guns from

8  them. In August 1998, he was selling narcotics in gang territory. In December 1998, he was

9  documented as having Seven Trees tattoos and wearing gang clothing. In another incident, he called

10 an officer "cuzz," a term frequently used by Crips members. In May 1998, he flashed gang signs

11 at an officer in gang territory while in the company of another gang member. In March 1999, he was

12 stopped in gang territory with Darbey while carrying a concealed weapon, and gave a false name.

13 In May 1999, he was contacted for being under the influence, and for possession and sale of rock

14 cocaine in gang territory. In March 2004, he was involved in the home invasion robbery with

15 Darbey, during which he was reportedly wearing blue clothing, and the instant case. RT 312-319.

16      Detective Sass opined that the robbery and carjacking were committed for the benefit of

17 and in association with a criminal street gang. The crimes benefitted the gang by way of retaliation,

18 intimidation, regaining respect, boosting recruitment, boosting reputation, and financial gain. The

19 crimes were committed in association with a criminal street gang because Darbey and Beloney were

20 both gang members and committed the crimes together. RT 320, 375-377.

21      John King, Darbey's grandfather, said Darbey and Beloney had been friends since they

22 were very young. Darbey's mother's name was Gail King. RT 524-527. Ruthie Dandridge,

23 Beloney's mother, confirmed that Beloney and Darbey had been friends and neighbors since early

24 childhood. RT 528-531. Both Beloney and her son Edmond had Seven Trees tattoos. RT 532.

25                    **STANDARD FOR GRANTING RELIEF**

26      The Court reviews the state court's rulings under a "highly deferential" standard imposed

27 by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Woodford v. Visciotti*, 537

28

U.S. 19, 24 (2002) (per curiam).  The federal court has no authority to grant habeas relief unless the state court's ruling was "contrary to, or involved an unreasonable application of," clearly established Supreme Court precedent.  28 U.S.C. § 2254(d)(1).  A decision constitutes an "unreasonable application" of Supreme Court law if the state court's application of law to the facts is "objectively unreasonable."  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  A state court's ruling based on a factual determination also must be "'objectively unreasonable' in light of the record" to warrant habeas relief.  *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003); 28 U.S.C. § 2254(d)(2).  The petitioner bears the burden of showing that the state court's decision was unreasonable.  *Visciotti*, 537 U.S. at 25.  Even if a constitutional error occurred, habeas relief is available only if the error had a "substantial and injurious effect or influence in determining the jury's verdict."  *Fry v. Pliler*, ___ U.S. ___, 127 S.Ct. 2321, 2325, 2328 (2007), internal quotation marks omitted; *see Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

**ARGUMENT**

**I.**

**THE STATE COURT REASONABLY REJECTED PETITIONER'S CLAIM THAT THE TRIAL COURT'S ADMISSION OF OTHER GANG CONDUCT VIOLATED HIS RIGHT TO DUE PROCESS**

Petitioner contends the trial court violated his right to due process by admitting evidence that he, Darbey, and his brother, Edmond Beloney, committed a home invasion robbery a few hours after the carjacking and robbery at issue here.  The state court reasonably rejected his claim.

**A.  State Court Record**

Before trial, both Darbey and Beloney moved to exclude evidence of the home invasion robbery.  RT 42-46, 79.  The prosecutor wanted to present the evidence to show the ongoing activity of the criminal street gang and that defendants were members of the gang.  RT 43, 80.  The court denied defendants' motion, finding that both membership in the gang and the ongoing activities of the gang were appropriate subjects for expert testimony.  RT 81.  The court also found the probative value of the evidence outweighed its prejudicial effect.  *Id*.

Before Detective Sass testified, the court instructed the jury that evidence of criminal

street gang activities was being admitted for a limited purpose.  RT 231-232.  In final instructions, the court reiterated the limited purpose of the evidence.  RT 611-613.

### B.    State Court Of Appeal's Ruling

The state court of appeal rejected petitioner's claim as follows:

In the companion case, the court held a lengthy Evidence Code section 402 hearing regarding the proposed testimony of Officer Sass in support of the gang allegations.[4] In that case, the court ruled that Sass could testify as an expert at trial about gang culture, habits and psychology; the ongoing nature of the gang; the primary activities of the gang; the pattern of criminal activity; the defendants' gang affiliations; and, whether the crimes were committed for the benefit of the gang.  The court also ruled that Sass could reference the carjacking incident in her testimony regarding the ongoing nature and primary activities of the gang.  As noted above, the parties in this case stipulated on June 21, 2005, that the record of that hearing would be considered part of this case, and that the court's rulings regarding that hearing would be the same in this case.  However, on July 26, 2005, the court separately ruled that it would not exclude admissible evidence of the home invasion robbery that occurred the day after the carjacking and robbery in this case.

As noted above, prior to Officer Sass's testimony, the court instructed the jury with CALJIC No. 17.24.3, the limiting instruction on the use of testimony showing that defendants may have committed other crimes.  After the parties rested the court instructed the jury with CALJIC Nos. 2.09 [evidence limited as to purpose], and 2.50 [evidence of other crimes].  Specifically, the court instructed the jury that evidence that defendants committed crimes other than those for which they were on trial "may be considered by you only for the limited purpose of determining if it tends to show:  [] That the crime or crimes charged were committed for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members."

Beloney contends that, notwithstanding the court's limiting instructions, the evidence of the home invasion robbery should not have been admitted because it was overly prejudicial.  He argues that "the jury in this case could not possibly hear that he and Darbey had been involved in a home invasion robbery hours after the incident in this case and fail to conclude from that evidence that [he] had a propensity to commit gang offenses."

"To trigger the gang statute's sentence-enhancement provision (§ 186.22, subd. (b)), the trier of fact must find that one of the alleged criminal street gang's primary activities is the commission of one or more of certain crimes listed in the gang statute."  (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 322 (*Sengpadychith*).)  That requirement is satisfied by the testimony of a police gang expert who expresses his or her opinion that the primary

---

4.  In Santa Clara County Superior Court No. CC447776, Beloney, Darbey, and Beloney's brother, Edmond Beloney, were charged with two counts of first degree residential robbery while acting in concert, Cal. Penal Code § 213(a)(1)(A).  The District Attorney alleged the crimes were committed, as here, for the benefit of a criminal street gang, Cal. Penal Code § 186.22(b)(4).  The court of appeal took judicial notice of the records in that case.  Exh. H at 2 n.2.  Edmond Beloney's federal habeas petition arising out of that case is currently pending before this Court.  *Beloney v. Hedgpeth*, C 07-4327 WHA (PR).

activities of the gang in question were one or more statutorily listed crimes.  (*Ibid.*; [*People v.*] *Gardeley* [(1996)] 14 Cal.4th [605,] 611, 620.)  Evidence of either past or present criminal acts is admissible to establish the statutorily required primary activities of the alleged criminal street gang. (*Sengpadychith, supra*, 26 Cal.4th at p. 323.)  While such evidence alone might not be sufficient to prove the alleged gang's primary activities, "[s]ufficient proof of the gang's primary activities might consist of evidence that the group's members consistently and repeatedly have committed activity listed in the gang statute."  (*Id*. at p. 324.)

Some of the evidence that is admissible to establish the criminal street gang enhancement may be inadmissible to prove the charged crimes, so the trial court has discretion to bifurcate the trial on the enhancement.  (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1048-1049.)  However, "[e]ven if some of the evidence offered to prove the gang enhancement would be inadmissible at trial of the substantive crime itself—for example, if some of it might be excluded under Evidence Code section 352 as unduly prejudicial when no gang enhancement is charged—a court may still deny bifurcation." (*Id*. at p. 1050.)  "Even if some of the expert testimony would not have been admitted at a trial limited to guilt, the countervailing considerations that apply when the [gang] enhancement is charged permitted a unitary trial."  (*Id*. at p. 1051.)  In addition, when all of the gang evidence is relevant to the gang enhancement, which was a legitimate purpose for the jury to consider it, the trial court need only give a limiting instruction if requested to do so.  (*Id*. at p. 1052.)

In this case, the jury could properly consider the home invasion robbery evidence on the issue of the criminal street gang enhancement.  The court instructed the jury that the home invasion robbery evidence could not be considered as showing that either of the defendants were bad people or that they had a disposition to commit crimes, and that the jury could only consider the evidence for the purpose of determining the criminal street gang enhancement.  The limiting instructions told the jury that the home invasion robbery evidence was not relevant to the issue of the defendants' guilt of the charged carjacking and robbery:  The jury was instructed that "[e]vidence will be introduced for the purpose of showing criminal street gang activities and of criminal acts by gang members of the defendants, or other crimes by other defendants that are on trial [sic].  Except as otherwise instructed, this evidence if believed, may not be considered by you to prove that the defendants in this case are persons of bad character, or that they possess a disposition to commit crimes.  It may be considered by you for the limited purpose of determining if it tends to show that the crimes charged were committed for the benefit of, at the direction of, or in association with the criminal street gang with the specific intent to promote, further or assist in any criminal conduct by gang members.  [] For the limited purpose for which you may consider this evidence, you must weigh it in the same manner as you do with all other evidence in the case.  You are not permitted to consider such evidence for other purposes."  In addition, Officer Sass's testimony about the home invasion robbery was not any more inflammatory than her testimony regarding the other incidents she considered as a basis for her opinion that the carjacking and robbery were committed for the benefit of, or in association with, a criminal street gang.  Accordingly, we conclude that, given the court's limiting instructions, the home invasion robbery evidence was not so prejudicial that the court erred or abused its discretion by admitting it.

Exh. H at 24-27.

## C.  The State Court's Rejection Of Petitioner's Claim Was Reasonable

Issues relating to the admission of evidence generally do not rise to the level of a federal

1  constitutional question. *Estelle v. McGuire*, 502 U.S. 62, 68-72 (1991). "Only if there are *no*

2  permissible inferences the jury may draw from the evidence can its admission violate due process.

3  Even then, the evidence must 'be of such quality as necessarily prevents a fair trial.' [Citation.]"

4  *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991), original italics; *see United States v.*

5  *LeMay*, 260 F.3d 1018, 1026 (9th Cir. 2001) (explaining that in *McKinney v. Rees*, 993 F.2d 1378

6  (9th Cir. 1993), a pre-AEDPA case, the court "granted a writ of habeas corpus and overturned a

7  murder conviction where the petitioner's trial had been infused with highly inflammatory evidence

8  of almost no relevance").

9          Where the evidence is relevant to an issue in the case, the court need not further address

10  the defendant's assumption that admission of irrelevant evidence violates due process. *Estelle v.*

11  *McGuire*, 502 U.S. at 70. The "admission of even highly prejudicial evidence [does not] necessarily

12  trespass on a defendant's constitutional rights." *United States v. LeMay*, 260 F.3d at 1027. The

13  question is whether the evidence is relevant and "not overly prejudicial." *Id.*; *see United States v.*

14  *Norris*, 428 F.3d 907, 913-14 (9th Cir. 2005) (evidence may be admitted under Rule 414(a) if it is

15  relevant, probative, and not outweighed by its prejudicial effect).

16          Here, the state court did not unreasonably reject petitioner's claim that admission of

17  evidence that he committed a home invasion robbery with his co-defendant within hours of the

18  charged carjacking violated his right to due process. As the state court found, the evidence was

19  relevant to prove the elements of the gang enhancement allegation, specifically, to show the primary

20  activities of the gang and that it was an ongoing street gang. *See People v. Hernandez*, 33 Cal. 4th

21  1040, 1047 (2004). Petitioner had admitted to police that he was a Seven Trees gang member and

22  that he had participated in the home invasion robbery with two other gang members. RT 283, 296-

23  297, 493. The challenged evidence was therefore relevant to establish that the gang was an

24  "ongoing association," *People v. Hernandez,* 33 Cal.4th at 1047, and that one of its primary

25  activities was an enumerated crime. Cal. Penal Code § 186.22(e). The evidence was not admitted

26  to prove the substantive crimes, and the jury was given specific instructions that limited the use of

27  the evidence. Accordingly, the state court did not unreasonably reject petitioner's claim that

28

admission of the evidence violated due process. *See Windham v. Merkle*, 163 F.3d 1092, 1103-1104 (9th Cir. 1998) (gang evidence admissible to show motive for participating in crimes).

Moreover, even if the state court had unreasonably rejected petitioner's claim, the error had no "substantial and injurious effect or influence in determining the jury's verdict." *Fry v. Pliler*, 127 S.Ct. at 2325, 2328, internal quotation marks omitted; *see Brecht v. Abrahamson*, 507 U.S. at 637. Petitioner admitted on appeal, "there is no question that the prosecution had a strong case with respect to the carjacking. In closing argument defense counsel even admitted that it had occurred. (7 RT 726.)" Exh. C at 12. He also acknowledged that "the jury heard few details about the home invasion robbery." Exh. C at 14. He nevertheless contended that "the evidence supporting the gang enhancement was not nearly so strong," and thus evidence of the home invasion robbery was prejudicial. Exh. C at 12. He also argued there was no evidence of his own gang involvement in the years leading up to his crime spree.

Petitioner's argument shows why the challenged evidence was relevant. The prosecutor wanted to show that the gang's activities were ongoing. The gang expert relied on the home invasion robbery to support her opinion that the gang was ongoing, and that one of the gang's primary activities was the commission of offenses listed in the statute. The testimony concerning the home invasion robbery was very brief, and was not inflammatory, as petitioner acknowledges. However, it tended to dispel his argument that no evidence showed recent gang activity on his part.

Further, evidence supporting the gang allegation was substantial, even without evidence of the home invasion robbery. Substantial other evidence showed the ongoing nature of the gang and its primary activities. The current crimes alone established the predicate offenses. In addition, numerous other crimes to which the expert testified showed the gang had committed the requisite predicate offenses. And, as argued below, substantial evidence showed that petitioner committed the carjacking and robbery for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members. Thus, even if petitioner could have shown the trial court erred by admitting evidence of

1    the home invasion robbery, he could not show it had a substantial or injurious effect or influence in

2    determining the jury's verdict.

3    <div align="center">**II.**</div>

4    **THE STATE COURT REASONABLY REJECTED PETITIONER'S
     CLAIM THAT THERE WAS INSUFFICIENT EVIDENCE TO
5    SUPPORT THE GANG ENHANCEMENT**

6        Petitioner contends there was insufficient evidence to support the jury's finding that the

7    carjacking and robbery were committed "for the benefit of, at the direction of, or in association with

8    any criminal street gang, with the specific intent to promote, further, or assist in any criminal

9    conduct by gang members." Cal. Penal Code § 186.22(b)(4). The state court reasonably rejected

10   his claim.

11   **A.    State Court Of Appeal's Ruling**

12       The state court of appeal rejected petitioner's claim as follows:

13       Darbey, joined by Beloney, contends that the evidence was insufficient to support
     the criminal street gang enhancements. Darbey argues that the prosecution did not prove
14   that he committed the offenses for the benefit of, at the direction of, or in association with
     a criminal street gang, and that he did so with the specific intent to promote, further, or
15   assist in criminal conduct by gang members.

16       The same standard of review applies to claims of insufficiency of the evidence to
     support a gang enhancement finding as for a conviction. (*People v. Vy* (2004) 122
17   Cal.App.4th 1209, 1224; *People v. Ortiz* (1997) 57 Cal.App.4th 480, 484.) "A reviewing
     court faced with such a claim determines 'whether, after viewing the evidence in the light
18   most favorable to the prosecution, any rational trier of fact could have found the essential
     elements of the crime beyond a reasonable doubt.' [Citations.] We examine the record
19   to determine 'whether it shows evidence that is reasonable, credible and of solid value
     from which a rational trier of fact could find the defendant guilty beyond a reasonable
20   doubt.' [Citation.] Further, 'the appellate court presumes in support of the judgment the
     existence of every fact the trier could reasonably deduce from the evidence.' [Citation.]"
21   (*People v. Catlin* (2001) 26 Cal.4th 81, 139 (*Catlin*).) " 'A reasonable inference,
     however, "may not be based on suspicion alone, or on imagination, speculation,
22   supposition, surmise, conjecture, or guess work. [] . . . A finding of fact must be an
     inference drawn from evidence rather than . . . a mere speculation as to probabilities
23   without evidence." ' [Citation.]" (*People v. Raley* (1992) 2 Cal.4th 870, 891.)

24       "This standard applies whether direct or circumstantial evidence is involved."
     (*Catlin, supra,* 26 Cal.4th at p. 139.) The element of intent is generally proved with
25   circumstantial evidence. "Intent is rarely susceptible of direct proof and usually must be
     inferred from the facts and circumstances surrounding the offense. [Citations.]" (*People
26   v. Pre* (2004) 117 Cal.App.4th 413, 420.) Evidence to support the element of specific
     intent may be shown by a defendant's conduct, including any words the defendant may
27   have spoken, and by all the circumstances surrounding the commission of the acts.
     (*People v. Craig* (1994) 25 Cal.App.4th 1593, 1597; *People v. Chinchilla* (1997) 52

28

1    Cal.App.4th 683, 690.)

2        Section 186.22, subdivision (b) imposes punishment of life imprisonment with a
     minimum of 15 years when a defendant is convicted of "carjacking, as defined in Section
3    215," "for the benefit of, at the direction of, or in association with any criminal street
     gang, with the specific intent to promote, further, or assist in any criminal conduct by
4    gang members." (§ 186.22, subd. (b)(4)(B).)  The same subdivision imposes a 10-year
     enhancement when a defendant is convicted of a violent felony such as robbery (see §
5    667.5, subd. (c)(9)) "for the benefit of, at the direction of, or in association with any
     criminal street gang, with the specific intent to promote, further, or assist in any
6    criminal conduct by gang members." (§ 186.22, subd. (b)(1)(C).)  The essential elements of an
     allegation under this subdivision are:  (1) the crimes charged were committed for the
7    benefit of, at the direction of, or in association with a criminal street gang; and (2) these
     crimes were committed with the specific intent to promote, further, or assist in any
8    criminal conduct by gang members. (*People v. Morales* (2003) 112 Cal.App.4th 1176,
     1198 (*Morales*).)  The jury was so instructed.  (See CALJIC No. 17.24.2; see also,
9    CALCRIM No. 1401.)  Defendants contend that the prosecution failed to establish either
     one of these essential elements.  They argue that the evidence showed that they "appeared
10   to be joined with two persons who had little or no relation to the gang," and that there was
     a lack of a connection to any real gang motive, benefit or connection other than their own
11   supposed gang membership.

12       The record discloses that defendants left Hall's apartment together with Hall and
     Goetz around 10:00 p.m. on March 21, 2004.  When they later drove into the parking lot
13   of an apartment complex, they saw two men standing by a Subaru who appeared to be
     staring at them.  Goetz drove by the men, stopped, and parked.  Defendants got out, telling
14   Hall and Goetz to stay where they were.  Defendants then went over to the Subaru, said
     words that made the victims believe that defendants were going to shoot them, then took
15   personal property from the victims.  Beloney told Goetz to leave and brought Hall over,
     and Hall drove the Subaru away after the victims were moved behind a wall and told to
16   get down on their knees.  Defendants then joined Hall and drove back to Hall's apartment,
     where Goetz later joined them.  Hall, Goetz and Beloney later admitted being involved
17   in the carjacking incident.  In closing argument, Beloney's counsel told the jury that
     Beloney was willing to accept punishment for the carjacking incident and, on appeal,
18   neither defendant contests the sufficiency of this evidence to support the jury's findings
     that defendants committed carjacking and second degree robbery on the night of March
19   21, 2004.

20       The record further discloses that both Goetz and Hall knew that defendants were
     members of the Seven Trees gang before they left with defendants on the night of March
21   21, 2004.  When defendants arrived at the apartment complex, they commented that the
     victims were giving them dirty looks.  They went over to the men and robbed them.  Then,
22   with the help of Hall, they committed a carjacking.  Officer Sass testified as a gang expert
     that in her opinion defendants were members of the Seven Trees Crips gang, and that the
23   Seven Trees Crips gang is an ongoing criminal street gang, and she explained the bases
     for her opinions.  Officer Sass also testified that in her opinion the robberies and
24   carjacking were committed for the benefit of and in association with a criminal street
     gang, and she explained the bases for her opinions.  Officer Sass testified that defendants
25   felt that the victims had disrespected them in front of non-gang members and that they had
     to save face as disrespecting one gang member is disrespecting the entire gang.
26   Defendants also had the victims kneel down, showing the victims defendants' power over
     them.  In addition, defendants gained respect and reputation by committing the offenses
27   in the presence of non-gang members.

28

We conclude that this is sufficient evidence to support the section 186.22, subdivision (b) element that the robberies and carjacking in this case were "committed for the benefit of, at the direction of, or in association with any criminal street gang."  We also conclude that this is sufficient evidence to support the section 186.22, subdivision (b) element that the offenses were committed "with the specific intent to promote, further, or assist in any criminal conduct by gang members."  In our limited role of evaluating a sufficiency-of-the-evidence claim, we do not reweigh the evidence, redetermine issues of credibility, or second-guess whether we would have reached a conclusion different from the trier of fact.  (*People v. Ferraez* (2003) 112 Cal.App.4th 925, 931.)  Thus, as another appellate court reasoned in rejecting a similar challenge to a gang enhancement finding:  "Here a qualified expert testified the participation of a Southside gang member in a Townsend Street retaliation killing would benefit Southside by enhancing its 'respect.'  It was for the jury to assess the weight of that testimony in the first instance, and since we believe a 'rational juror' could have been convinced by it, we cannot deem it insufficient."  (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1384.)  We find substantial evidence supports the jury's findings that defendants committed the robberies and carjacking for the benefit of, or in association with, a criminal street gang.

Exh. H at 11-14.

**B.    The State Court's Rejection Of Petitioner's Claim Was Reasonable**

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt.  *Payne v. Borg*, 982 F2d 335, 338 (9th Cir. 1992).  The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Id.*, quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted.  *See Jackson*, 443 U.S. at 324; *Payne*, 982 F.2d at 338.  On habeas review, a federal court evaluating the evidence should take into consideration all of the evidence presented at trial.  *LaMere v. Slaughter*, 458 F.3d 878, 882 (9th Cir. 2006).  If confronted by a record that supports conflicting inferences, a federal habeas court "must presume—even if it does not affirmatively appear on the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  *Jackson*, 443 U.S. at 326.  Circumstantial evidence and inferences drawn from that evidence may be sufficient to support a conviction, but mere suspicion and speculation cannot support logical inferences.  *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995).

After AEDPA, a federal habeas court applies the standard of *Jackson* with an additional

1   layer of deference. *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). Generally, a federal

2   habeas court must ask whether the operative state court decision reflected an unreasonable

3   application of *Jackson* to the facts of the case. *Id*. at 1275. That is, the state court's application of

4   the *Jackson* standard must be "'objectively unreasonable.'" *Id*. at 1275 n.13, quoting *Williams v.*

5   *Taylor*, 529 U.S. 362, 409 (2000).

6            Here, the state court reasonably rejected petitioner's claim. As the state court observed,

7   petitioner admitted his participation in the underlying crimes. He also admitted that he was a

8   member of Seven Trees Crips, and had numerous gang-related tattoos. Other evidence showed that

9   petitioner had an extensive criminal history in connection with his gang involvement. Substantial

10  evidence also supported the expert's testimony that the charged crimes were committed to benefit

11  the gang. Goetz testified that he thought they were going to commit a robbery that evening because

12  petitioner said they were going to "jack some fools." RT 145. When they got to the parking lot and

13  saw the victims, Goetz's companions said, "What are they doing mugging at us?" RT 148. Hall

14  testified he heard petitioner say, "We are going to handle these fools." RT 180. He testified that

15  Darbey held one of the victims by the jacket and said, "You jacked my brother. . . . [I]f you guys

16  ain't it, then we will bring the car back." RT 182. Hall participated in the carjacking because he

17  was intimidated by the way Darbey and petitioner were talking to the victims. Hailu testified that

18  one of the men, while talking to someone on his cell phone, made statements that indicated

19  retaliation for an earlier incident, including a threat to "blow them." RT 120. The man said, "Does

20  this look like the car?," and "Does this look like the niggers that did this?" RT 119. After taking

21  their belongings, the man told Hailu and Seck, "I'm going to take your car and show it to my

22  brother. If this is the car that he saw, then, you know, you guys are dead. If it's not, then we are

23  going to leave it there." RT 124.

24           Detective Sass opined the carjacking and robbery were committed both for the benefit of

25  and in association with the gang. She opined the crimes were committed in association with a

26  criminal street gang because Darbey and petitioner were fellow gang members and committed the

27  crimes together. She opined the crimes were committed for the benefit of the gang because they

28

retaliated for the real or perceived challenging looks by the victims, regained respect, boosted recruitment, boosted reputation, intimidated others, and resulted in financial gain. Sass noted the crimes were committed while in the company of Goetz and Hall, who knew that Darbey and petitioner were gang members.

The evidence also showed petitioner committed the crimes with the specific intent to promote, further, or assist in any criminal conduct by gang members. He admitted his active participation in the crimes. One of his companions was a gang member, and they assisted each other in perpetrating the crimes. The crimes also had the effect of promoting the gang, a fact of which petitioner was surely aware in light of his conduct and verbal threats. On this evidence, a rational jury could find true the gang enhancement allegations.

Nevertheless, in state court, and in his current petition, petitioner contends *Garcia v. Carey*, 395 F.3d 1099 (9th Cir. 2005), supports his claim with respect to the second element of the gang enhancement. In that case, the court granted habeas corpus relief to a California prisoner after finding the evidence was insufficient to support the gang allegation because there was no evidence the defendant committed the robbery in order to facilitate *other* gang-related criminal conduct. *Id.* at 1103-1104.

Judge Wallace's dissenting opinion in *Garcia* disputed the majority opinion's interpretation of California law. "But section 186.22(b)(1) does not require proof that the crime of conviction was committed with the intent to further some other specifically identified crime or category of crimes, and California courts have rejected sufficiency of the evidence claims even where such evidence was entirely lacking. [Citations.]" *Garcia v. Carey*, 395 F.3d at 1105 (Wallace, J., dissenting).

Like Judge Wallace, the Court of Appeal in *People v. Romero*, 140 Cal.App.4th 15 (2006), found the *Garcia* analysis unpersuasive.

> In *Garcia*, the Ninth Circuit found insufficient evidence of specific intent to promote, further, or assist in *other* criminal conduct by the defendant's gang. We disagree with *Garcia*'s interpretation of the California statute, and decline to follow it. (See *People v. Burnett* (2003) 110 Cal.App.4th 868, 882, 2 Cal.Rptr.3d 120 [federal authority is not binding in matters involving state law]; see also *Oxborrow v. Eikenberry* (9th Cir. 1989) 877 F.2d 1395, 1399 [state court interpretation of state statute binding on federal court

unless interpretation is a subterfuge or untenable].)  By its plain language, the statute requires a showing of specific intent to promote, further, or assist in "*any* criminal conduct by gang members," rather than *other* criminal conduct.  (§ 186.22, subd. (b)(1), italics added.)

*People v. Romero,* 140 Cal.App.4th at 19; *see also People v. Gardeley*, 14 Cal.4th 605, 621-622 (1996) (prosecution need not prove that predicate offenses used to establish pattern of gang activity were gang related).[5/]  As the state court of appeal noted in *Romero*, federal courts are bound by state court interpretations of state law.  *Estelle v. McGuire*, 502 U.S. at 67-68; *Wainwright v. Goode*, 464 U.S. 78, 84 (1983) (per curiam).   Consequently, the state court's rejection of a contrary interpretation of the state statute by a lower federal court was not objectively unreasonable.

As the state court of appeal found, substantial evidence supports the jury's finding on the gang enhancement allegation.  Accordingly, petitioner's claim of insufficient evidence should be rejected.

---

5.  The *Romero* court interpreted California Penal Code section 186.22(b)(1), which is identical to section 186.22(b)(4), at issue here, in all pertinent respects.  The only difference between the subdivisions is the punishment proscribed for the crimes at issue.

1

**CONCLUSION**

2      For the reasons stated, respondent respectfully requests that the petition for writ of habeas

3 corpus be denied.

4      Dated:  January 7, 2008

5                          Respectfully submitted,

6                          EDMUND G. BROWN JR.
                          Attorney General of the State of California

7                          DANE R. GILLETTE
                          Chief Assistant Attorney General

8                          GERALD A. ENGLER
                          Senior Assistant Attorney General

9

10                         PEGGY S. RUFFRA
                          Supervising Deputy Attorney General

11

12                         /s/ Joan Killeen
                          JOAN KILLEEN

13                         Deputy Attorney General

14                         Attorneys for Respondent

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - C 07-4649
WHA (PR)

1

# TABLE OF CONTENTS

2

**Page**

3 STATEMENT OF THE CASE                                                1

4 STATEMENT OF FACTS                                                   2

5 STANDARD FOR GRANTING RELIEF                                         8

6 ARGUMENT                                                             9

7 I.    THE   STATE   COURT   REASONABLY   REJECTED
      PETITIONER'S   CLAIM   THAT   THE   TRIAL   COURT'S
8     ADMISSION OF OTHER GANG CONDUCT VIOLATED HIS
      RIGHT TO DUE PROCESS                                             9

9     A.   State Court Record                                         9

10    B.   State Court Of Appeal's Ruling                             10

11    C.   The State Court's Rejection Of Petitioner's Claim Was Reasonable   11

12

13 II.   THE   STATE   COURT   REASONABLY   REJECTED
      PETITIONER'S CLAIM THAT THERE WAS INSUFFICIENT
      EVIDENCE TO SUPPORT THE GANG ENHANCEMENT          14

14    A.   State Court Of Appeal's Ruling                             14

15    B.   The State Court's Rejection Of Petitioner's Claim Was Reasonable   16

16 CONCLUSION                                                         20

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4

*Bowen v. Roe*
188 F.3d 1157 (9th Cir. 1999)                                    2

5

*Brecht v. Abrahamson*
6   507 U.S. 619 (1993)                                          9, 13

7   *Estelle v. McGuire*
502 U.S. 62 (1991)                                        11, 12, 19

8

*Fry v. Pliler*
9   ___ U.S. ___
127 S.Ct. 2321 (2007)                                        9, 13

10

*Garcia v. Carey*
11   395 F.3d 1099 (9th Cir. 2005)                                18

12   *Jackson v. Virginia*
443 U.S. 307 (1979)                                          16

13

*Jammal v. Van de Kamp*
14   926 F.2d 918 (9th Cir. 1991)                                 12

15   *Juan H. v. Allen*
408 F.3d 1262 (9th Cir. 2005)                                16

16

*LaMere v. Slaughter*
17   458 F.3d 878 (9th Cir. 2006)                                 16

18   *McKinney v. Rees*
993 F.2d 1378 (9th Cir. 1993)                                12

19

*Miller-El v. Cockrell*
20   537 U.S. 322 (2003)                                          9

21   *Payne v. Borg*
982 F2d 335 (9th Cir. 1992)                                  16

22

*People v. Gardeley*
23   14 Cal.4th 605 (1996)                                        19

24   *People v. Hernandez*
33 Cal. 4th 1040 (2004)                                      12

25

*People v. Romero*
26   140 Cal.App.4th 15 (2006)                                18, 19

27   *United States v. LeMay*
260 F.3d 1018 (9th Cir. 2001)                                12

28

## TABLE OF AUTHORITIES  (continued)

**Page**

*United States v. Norris*
428 F.3d 907 (9th Cir. 2005)                                        12

*Wainwright v. Goode*
464 U.S. 78 (1983)                                                 19

*Walters v. Maass*
45 F.3d 1355 (9th Cir. 1995)                                       16

*Williams v. Taylor*
529 U.S. 362 (2000)                                              9, 17

*Windham v. Merkle*
163 F.3d 1092 (9th Cir. 1998)                                     12

*Woodford v. Visciotti*
537 U.S. 19 (2002)                                               8, 9

**Statutes**

28 United States Code
    § 2244(d)(1)                                                2
    § 2254(d)(1)                                                9
    § 2254(d)(2)                                                9

Antiterrorism and Effective Death Penalty Act of 1996               8

California Penal Code
    § 186.22(b)(1)(A), (b)(4)                                   2
    § 186.22(b)(4)                                             14
    § 186.22(e)                                                12
    §§ 211-212.5(c)                                             1
    § 215                                                       1
    § 496(a)                                                    2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28