FILED

MAY 18 2010

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWIN BELONEY,<br><br>         Petitioner,<br><br>   v.<br><br>D. K. DISTO, Warden,<br><br>         Respondent.<br>                                              / | No. C 07-4649 WHA (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

### INTRODUCTION

This is a habeas case filed pro se by a state prisoner pursuant to 28 U.S.C. 2254. Respondent was ordered to show cause why the writ should not be granted based on the two claims in the petition. Respondent has filed an answer and a memorandum of points and authorities in support of it. Although given an opportunity to file a traverse, petitioner has not done so. For the reasons set forth below, the petition is **DENIED**.

### STATEMENT

In 2005, petitioner and his co-defendant Avery Michael Darbey were charged in Santa Clara County with carjacking (Cal. Pen. Code § 215), second-degree robbery (Cal. Pen. Code §§ 211, 212.5(c))), and receiving stolen property (Cal. Pen. Code § 496(a)) (Exh. A at 181-85). The information also alleged that petitioner and Darbey committed carjacking and second-degree robbery for the benefit of, at the direction of, or in association with a criminal street gang (Cal. Pen. Code § 186.22(b)(1)(A),(b)(4)) (*ibid.*). The charge for receiving stolen property was dismissed, and the jury convicted petitioner and Darbey of carjacking and second-degree

robbery and found that the gang allegation to be true (*id.* at 379-81). The trial court sentenced petitioner and Darbey each to a term of twenty-eight years to life in state prison, consisting of thirteen years for second-degree robbery and fifteen years to life for carjacking (*id.* at 558-63).

On December 28, 2006, the California Court of Appeal affirmed the conviction and sentence (Exh. H). The California Supreme Court denied petitioner's petition for review on April 12, 2007 (Exh. J). Petitioner filed the instant federal habeas petition on September 10, 2007.

## ANALYSIS

### A. STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant

2

1  state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at
2  411. Rather, the application must be "objectively unreasonable" to support granting the writ.
3  *See id.* at 409.

4  "Factual determinations by state courts are presumed correct absent clear and convincing
5  evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the
6  fact that the finding was made by a state court of appeals, rather than by a state trial court.
7  *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.),
8  amended, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing
9  evidence to overcome Section 2254(e)(1)'s presumption of correctness; conclusory assertions
10 will not do. *Id.*

11 Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination
12 will not be overturned on factual grounds unless objectively unreasonable in light of the
13 evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v.*
14 *Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

15 **B.  ISSUES PRESENTED**

16 Petitioner and Darbey were found to have approached two men who were standing in a
17 parking lot in San Jose on the night of March 21, 2004 (Exh. H at 3-5). Petitioner and Darbey
18 threatened to shoot them and then stole their car, wallet, cell phone and other times (*ibid.*).
19 Evidence was introduced that petitioner and Darbey were members of a local "Crips" gang, and
20 the jury found that they committed the carjacking and robbery "for the benefit of, at the
21 direction of or in association with" that gang (*id.* at 6-11).

22 As grounds for federal habeas relief, petitioner asserts that: (1) the trial court violated his
23 right to due process by admitting evidence of another robbery petitioner committed with his
24 brother and Darbey on the day after robbery and carjacking in this case; and (2) his right to due
25 process was violated because there was insufficient evidence to prove the gang-enhancement
26 allegations.

27 **1.  Admission of Evidence**

28 Petitioner claims that the trial court violated his right to due process by admitting overly

3

1    prejudicial evidence that petitioner committed a "home-invasion" robbery with his brother and
2    Darbey on the day after the crimes charged in this case. In a separate trial that was conducted
3    shortly before the trial in the instant case petitioner, his brother and Darbey were convicted of
4    the home-invasion robbery and the jury found true the allegations that it was gang-related (*id.* at
5    2 n.2, 24; Pet. Att. B at 10). The trial court admitted the evidence of the home-invasion robbery,
6    finding that it showed that petitioner was engaged in ongoing criminal activity for the gang and
7    that its probative value outweighed its prejudicial effect (Exh. A at 81). The trial court also
8    gave limiting instructions both at the time the evidence was admitted and at the close of
9    argument that the jury could only consider the other crime to prove the gang-enhancement
10   allegations and not as evidence of petitioner's bad character or propensity to commit the
11   underlying crimes (*id.* at 231-32, 611-13; Exh. H at 26-27).

12       As an initial matter, the United States Supreme Court "has not yet made a clear ruling
13   that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation
14   sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir.
15   2009). Absent such a ruling from the United States Supreme Court, a federal habeas court
16   cannot find the state court's ruling was an "unreasonable application" of "clearly established
17   federal law" under 28 U.S.C. 2254(d)(1). *Ibid.* (citing *Carey v. Musladin*, 549 U.S. 70, 77
18   (2006)). Under *Holley*, therefore, habeas relief cannot be granted under Section 2254(d)(1) on
19   Petitioner's claims that the admission of overly prejudicial evidence of his participation in the
20   home-invasion robbery violated his right to due process. *See id.* at 1101 n.2 (finding that
21   although trial court's admission of irrelevant and prejudicial evidence violated due process under
22   Ninth Circuit precedent, such admission was not contrary to, or an unreasonable application of,
23   "clearly established Federal law" under Section 2254(d)(1), and therefore not grounds for
24   granting federal habeas relief).

25       Even if federal habeas relief were available on the grounds that the admission of overly
26   prejudicial evidence violates due process, the evidence of petitioner's participation in the home-
27   invasion robbery caused no such violation in this case. The due process inquiry is whether the
28   admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally

4

1  unfair. *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995). Only if there are no permissible
2  inferences that the jury may draw from the evidence can its admission violate due process.
3  *Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th Cir. 1991).

4  To begin with, the evidence of petitioner's participation in the home-invasion robbery
5  with Darbey, another gang member, was relevant to the gang-enhancement allegation in the
6  instant case. As explained by the California Court of Appeal, in order to prove the gang
7  enhancement there must be evidence that the charged crimes are one of the gang's "primary
8  activities," which may be established by evidence of other "past or present" criminal acts
9  committed by the gang (Exh. H at 25 (citing Cal. Pen. Code § 186.22(b); *People v.*
10 *Sengpaychith*, 26 Cal.4th 316, 322 (2001)). A police officer testified as an expert on the gangs
11 in San Jose that the primary activities of the gang to which petitioner and Darbey belonged
12 included robbery, making criminal threats, intimidating witnesses and carjacking (Exh H. at 6).
13 The evidence that petitioner and his co-defendant were convicted of committing a home-
14 invasion robbery for the benefit of their gang shortly after the charged crimes was relevant to
15 prove that robbery is one of the gang's primary activities and that the charged robbery and
16 carjacking were done for the benefit of or in association with a gang.

17 Moreover, the jury was clearly instructed that the evidence was not relevant to the
18 carjacking and robbery charges, not to consider the evidence as showing petitioner's bad
19 character or propensity to commit crimes, and only to consider the evidence to determine
20 whether gang-enhancement allegations were true. The jury is presumed to follow these limiting
21 instructions. *See Aguilar v. Alexander*, 125 F.3d 815, 820 (9th Cir. 1997).

22 As the evidence of petitioner's participation in the home-invasion robbery served the
23 permissible purpose of showing that the charged crimes were consistent with gang activities,
24 and the limiting instructions presumptively prevented the jury from misusing the evidence, its
25 admission did not render the trial court fundamentally unfair in violation of petitioner's right to
26 due process. Consequently, the state appellate courts' rejection of this claim was not contrary
27 to, or an unreasonable application of, clearly established United States Supreme Court authority.
28

### 2. Sufficiency of Evidence

Petitioner contends that there was not sufficient evidence to support the gang enhancement. The testimony on that issue was set out by the California Court of Appeal:

> Officer Tamara Sass testified as an expert in African-American criminal street gangs. She testified that San Jose is predominantly a Crips town, and that the Seven Trees Crips started in 1984 or 1985. Since that time, the several San Jose Crips gangs, including Seven Trees Crips, Dark Side Mob, 408 Crips and South Side Crips, have merged and joined forces. Currently there are approximately 50 total and 20 validated and admitted Seven Trees Crips members. San Jose police validate gang members by their individual admissions to being a member as well as by their gang clothing and tattoos, their use of gang hand signs and graffiti, and their participation in crimes with other gang members. Crips members claim the color blue. In her opinion, Seven Trees Crips is an ongoing criminal street gang, the primary activities of which are witness intimidation, criminal threats, assaults with a deadly weapon, possession of drugs for sale, homicide, carjacking, and robbery. Her opinions are based on the following incidents.
>
> On February 1, 1995, two Dark Side Mob members accused the victim of stealing guns from their gang. They took the victim to a school, where defendant Beloney and his brother Edmond joined them. Edmond Beloney held a gun on the victim while the Dark Side Mob members robbed the victim of $400, and then assaulted him. On August 12, 1997, four Seven Trees Crips gang members were stopped for a Vehicle Code violation. Officers found cocaine, a .22 caliber handgun, and large amounts of cash on the men. On August 25, 1997, two admitted Seven Trees gang members got into a fight with, and later shot, a man because the man was selling drugs in an area the gang claimed as their turf. On December 26, 1997, an admitted Seven Trees Crips member went to the victim's home, put a gun to the victim's head and pulled the trigger, because he felt that the victim had disrespected him when he had earlier called the home. When the gang member saw red objects in the house, which he said were indicia of a rival gang, he assaulted the victim.
>
> On February 19, 2000, two black men came out of a party and were accosted by two admitted Seven Trees gang members who had not been allowed inside for the party. The gang members shot one victim and shot at the other. The gun used was found, and there were gang indicia including tagging, photographs, and clothing inside one gang member's room. On May 28, 2000, two black males claiming to be Seven Trees Crips members assaulted a man outside a convenience store after the man made some comments to them inside the store. On December 28, 2000, a Seven Trees gang member went to the house of the victim and demanded money that he felt was owed to him. When the victim refused to pay, the gang member assaulted her while another man with him said that it was " 'Seven Trees Business.' " The victim's daughter paid the money in order to get the men out of the house. Two weeks later, when the victim called one of the men, asking to get some of her daughter's property back from him, the man said, " 'I'll have your ass on a platter. You don't know who you are messing with.' "
>
> On April 14, 2002, two South Side Crips members took a car at a 7-Eleven at gun point. On November 16, 2002, Richard Knight, a validated Seven Trees gang member, went to the victim's home with another gang member and robbed the victim at gunpoint of some jewelry and marijuana. On April 16, 2003, an admitted Seven Trees gang member committed a battery on an A.P.G. gang

6

United States District Court
For the Northern District of California

member on a school campus, after the A.P.G. gang member disrespected him. On September 26, 2003, a Seven Trees gang member called a white male, who had wanted to be a gang member but who was not accepted by the gang, and threatened him. Both the male and his family feared for their lives.

On January 18, 2004, two men demanded a victim's money, then punched him in the face, knocked him to the ground, and took his wallet and cell phone. As the two men drove away, one yelled " 'Seven Trees.' " On January 30, 2004, Dante Watts requested protective custody while in jail because of being an admitted Seven Trees gang member. On March 14, 2004, Peter Hodges was contacted by police following a car stop. He had an "S" and a "7" tattooed on his left arm and a "J" and "Trees" tattooed on his right arm, and admitted being a Seven Trees gang member. On March 27, 2004, Richard Knight was stopped by police. He had "Crip" tattooed on his back and "7 Tree" tattooed on his stomach, and he admitted being a Seven Trees gang member for 10 years. On May 4, 2004, Deon Watts was stopped for a Vehicle Code violation. He had an "S," a "J," a "7," and "Trees" tattooed on his arms. He claimed to be a Seven Trees gang member for life. On September 15, 2004, the victim bragged that he had fought a Seven Trees gang member earlier that day and had beat him. Richard Knight returned to the area of the fight with a baseball bat and five other gang members and assaulted the victim with the bat. On February 8, 2005, a Seven Trees gang member with Seven Trees tattoos backed up some Norteno gang members during a gang fight in Seven Trees turf, brandishing a gun and committing assault with a deadly weapon.

Officer Sass testified that in her opinion, Darbey is a current member of the Seven Trees gang. Her opinion is based on field interview cards, prior police contacts and police reports. On April 26, 1993, Darbey was arrested for attempted auto burglary in Seven Trees turf. At the time of the attempted burglary and his arrest, Darbey was wearing blue sweats. On December 6, 1994, Darbey was involved in an assault with a deadly weapon with an admitted Crips gang member in an area known to be Seven Trees turf. On January 13, 1996, Darbey was involved in an assault with a deadly weapon and robbery in downtown San Jose near Seven Trees turf. On May 20, 1998, Darbey was loitering in Seven Trees turf in downtown San Jose. On June 1, 1998, Darbey was with another validated gang member when she was arrested for selling cocaine in an area known to be Seven Trees turf. On December 20, 1998, Darbey was under the influence of a stimulant in a known Seven Trees gang area. At the time, he was wearing blue shoes and had a " 'B.K.' " scar on his chest. B.K. stands for "blood killer," and is seen often on gang graffiti and tattoos. On February 2, 1999, when Darbey was contacted by police in downtown Seven Trees turf, he was concealing a 22-ounce baseball bat under his jacket. On March 12, 1999, Darbey was with defendant Beloney in Seven Trees turf in downtown San Jose. On March 27, 1999, Darbey was found to possess less than one ounce of marijuana in Seven Trees turf in downtown San Jose. On April 18, 1999, Darbey assaulted a victim in downtown Seven Trees turf while wearing a blue shirt. On November 28, 2001, Darbey admitted to San Bernardino county jail personnel that he was a member of the Seven Trees gang. In addition, the day after the carjacking, Darbey was involved in a home invasion robbery with defendant Beloney and Edmond Beloney of a person who had disrespected Darbey in front of other gang members and non-gang members.

Officer Sass also testified that, in her opinion, defendant Beloney is a member of the Seven Trees gang. Her opinion is based on conversations with other officers, field interview cards, and his admission to Lieutenant Ryan in this case. On March 21, 1994, Beloney was with Darbey in downtown San Jose when he was

7

|   |   |
|---|---|
| 1 | found by officers to be purchasing marijuana. On February 1, 1995, Beloney and his brother Edmond were involved in the assault at a school carried out by Dark Side Mob gang members. On May 18, 1998, Beloney flashed a gang sign at an officer while he was with a validated Seven Trees gang member. On March 14, 1998, officers responded to a report of a disturbance in downtown San Jose. The suspect fled, and was never caught. However, officers spoke to Beloney, who was at the scene wearing a blue cap. On August 24, 1998, Beloney was found to be selling narcotics in downtown San Jose Seven Trees turf. On December 8, 1998, Beloney was found to have "7" tattooed on his left arm and "Trees" tattooed on his right arm. He was wearing a blue Dallas Cowboys jacket and a belt with an "S" buckle. On March 12, 1999, Beloney was found with a concealed weapon in downtown San Jose Seven Trees turf. On May 5, 1999, Beloney was found to possess, sell, and be under the influence of cocaine in downtown San Jose Seven Trees turf. In addition, the day after the carjacking, Beloney was involved in a home invasion robbery with his brother Edmond and Darbey of a person who had disrespected Darbey in front of other gang members and non-gang members. |

Officer Sass also testified that, in her opinion, the carjacking and robbery in this case were committed for the benefit of and in association with a criminal street gang. Defendants are members of the Seven Trees gang and they felt that the victims had disrespected them and that they had to save face. Gang members have to retaliate if they are disrespected, as disrespecting one member is disrespecting the whole gang. Gangs that have not stood up to disrespect or to a challenge by a rival gang have disintegrated. In addition, during this incident, defendants had the victims kneel down, showing the victims defendants' power over them. Defendants also gained financially from the property they took, and gained respect and reputation by committing the offenses in the presence of non-gang members.

**Defense Evidence**
John King, Darbey's grandfather, testified that he has known Beloney and his twin brother Edmond since they were four or five. The twins were neighbors of his daughter, Gail King, and the defendants were real close growing up.

Ruthie Dandridge, Beloney's mother, testified that defendants have been best friends since they were very young children. They went to school together and did everything together. Although she never lived on Seven Trees Boulevard, both of her sons have "Seven Trees" tattoos.

(Exh. H at 6-10.)

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim. *Jackson v. Virginia*, 443 U.S. 307, 321 (1979).

A federal habeas court applies the standards of Jackson with an additional layer of

8

deference. *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). Generally, a federal habeas court must ask whether the operative state court decision reflected an unreasonable application of *Jackson* and *Winship* to the facts of the case. *Id.* at 1275 (quoting 28 U.S.C. 2254(d)). Section 2254(d)(1) plainly applies to Jackson cases; that is, if the state court affirms a conviction under Jackson, the federal court must decide whether the state court's application of Jackson was objectively unreasonable. *Sarausad v. Porter*, 479 F.3d 671, 6777-78 (9th Cir. 2007).

> The California Court of Appeal explained the gang enhancement at issue here:
>
> > Section 186.22, subdivision (b) imposes punishment of life imprisonment with a minimum of 15 years when a defendant is convicted of "carjacking, as defined in Section 215," "for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(4)(B).) The same subdivision imposes a 10-year enhancement when a defendant is convicted of a violent felony such as robbery (*see* § 667.5, subd. (c)(9)) "for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1)(C).) The essential elements of an allegation under this subdivision are: (1) the crimes charged were committed for the benefit of, at the direction of, or in association with a criminal street gang; and (2) these crimes were committed with the specific intent to promote, further, or assist in any criminal conduct by gang members. (*People v. Morales* (2003) 112 Cal.App.4th 1176, 1198 [].) The jury was so instructed. (*See* CALJIC No. 17.24.2; *see also*, CALCRIM No. 1401.)

(Exh. H at 12.)

Petitioner does not deny that he is a member of the "Seven Trees Crips" gang, but contends that there was insufficient evidence on the two elements set out above (Pet., Att. B at 18). As to the first element, the evidence that petitioner committed the crimes with another member of the Seven Trees Crips gang is sufficient evidence that the crimes were committed "in association with any criminal street gang." In addition, Officer Sass testified that the crimes tended to benefit the gang by enhancing respect for it and elevating its reputation, particularly as the crimes were committed in the presence of non-members. As to the second element, there is clear evidence that petitioner here intended to promote, further or assist the carjacking and robbery that he engaged in with his fellow gang member. Officer Sass's testimony also supports this element with regard to crimes other than the charged crimes insofar as she testified that crimes such as the carjacking and robbery in this case were done for gang members to "save

9

face" for themselves and their gang, which is viewed by gang members as necessary for the gang's survival when any gang member is challenged or "disrespected." *See Garcia v. Carey*, 395 F.3d 1099, 1104 (9th Cir. 2005) (holding similar expert testimony sufficient to satisfy second element of California's gang enhancement). Thus, there was substantial evidence for the jury to find both elements of the gang enhancement true beyond a reasonable doubt.

For these reasons, the state appellate courts' rejection of this claim was not contrary to, or unreasonable applications of, clearly established United States Supreme Court authority.

## CONCLUSION

The petition for a writ of habeas corpus is **DENIED**.

Rule 11(a) of the Rules Governing Section 2254 Cases now requires a district court to rule on whether a petitioner is entitled to a certificate of appealability in the same order in which the petition is denied. Petitioner has failed to make a substantial showing that his claims amounted to a denial of his constitutional rights or demonstrate that a reasonable jurist would find this court's denial of his claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Consequently, no certificate of appealability is warranted in this case.

The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: May 17, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.07\BELONEY4649.RUL.wpd

10